UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES PRADKE, Individually, )<br>FUNDA PRADKE, Individually, )<br>and as Parents and Next Friends of )<br>E.P., a minor and E.P., a minor, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>STEVEN HENDERSHOTT, )<br>GS PARTNERS, INC., d/b/a RIDE THE )<br>NINE SHOOTERS LOUNGE; HURLEY )<br>CONSOLIDATED ENTERPRISES, LLC, )<br>d/b/a DRIFTERS PUB; FAT JACK'S )<br>INC., d/b/a FAT JACK'S, )<br>)<br>)<br>Defendants. ) | Case No. 15-cv-1461-JES-JEH |

## ORDER AND OPINION

This matter is now before the Court on Plaintiffs' Motion for Partial Summary Judgment. For the reasons set forth below, Plaintiffs' Motion is GRANTED.

### Background [1]

On November 13, 2015, Plaintiffs filed this action in United States District Court - Central District Illinois against Defendants alleging a cause of action for liability under the Dram Shop Act, 235 ILCS 5/6-21. On April 17, 2018 Plaintiffs, James and Funda Pradke, individually and on behalf of their two minor children, filed a Motion for Partial Summary Judgment on the issue of liability pursuant to Federal Rule of Civil Procedure 56 against Defendants, GS Partners, Inc., d/b/a Ride The Nine Shooters Lounge (hereinafter "Shooters"); Hurley Consolidated Enterprises, LLC, d/b/a Drifters Pub (hereinafter "Drifters"); and Fat Jack's Inc., d/b/a Fat Jack's

---

[1] Citations to the Docket in this case are shown as (D. #).

(hereinafter "Fat Jack's") (collectively, "Establishment Defendants"). Plaintiffs argue that the above-listed establishments are strictly liable for Plaintiffs' injuries, loss of support, and property damage pursuant to the Illinois Dram Shop Act, 235 ILCS 5/6-21. Defendants submitted responses to which Plaintiffs have replied. This Court has subject matter jurisdiction over the action because complete diversity exists and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

On October 9, 2015, Plaintiffs were severely injured in a motor vehicle collision that occurred on Interstate 55 in McLean County, Illinois. (D. 49, at p. 3). Plaintiffs' vehicle was struck by another vehicle operated by Defendant Steven Hendershott (hereinafter "Hendershott") traveling the wrong way in a southbound direction along the northbound lanes of Interstate 55. (D. 70, at p. 4). At the time of the accident, Hendershott was intoxicated as a result of the sale of alcoholic beverages by Defendants, Shooters, Drifters, and Fat Jack's. (D. 70, at p. 38). Defendants Shooters and Drifters concede Plaintiffs' Motion regarding their liability as it pertains to the alleged violations of the Illinois Dram Shop Act. (D. 75). However, they still dispute the potential damages. Defendant Fat Jack's does not concede the issue of liability and filed a Response (D. 74) to Plaintiffs' Motion for Partial Summary Judgment, to which Plaintiff has replied. (D. 77).

The parties agree that the following, taken from Plaintiffs' statement of undisputed material facts, are not in dispute. (D. 70, at pp. 3-6). On October 8, 2015, prior to the time when Hendershott struck Plaintiffs, Hendershott was at Shooters, Drifters, and Fat Jack's drinking alcoholic beverages. (D. 70, at p. 38). Hendershott arrived at Shooters between 7:30 and 8:00 p.m. with a female companion. (D. 70, at p. 38). Hendershott had not consumed any alcohol prior to arriving at Shooters. (D. 70-1, at pp. 17-19). He testified that he consumed at least two

2

Bud Lights and two Jagerbombs while at Shooters. (D. 70-1, at pp. 42-44). Hendershott and his companion were at Shooters until 11:00 or 11:30 p.m. (D. 70-1, at p. 47). They then traveled to Drifters and arrived at approximately 12:00 a.m. (D. 70-1, at p. 54). While at Drifters, an establishment that he visited regularly, Hendershott purchased and consumed two vodka cranberries. (D. 70-1, at p. 54). He also purchased and consumed at least one Jagerbomb. (D. 70-1, at p. 55). Hendershott and his companion then left Drifters and walked to Fat Jack's, where they stayed for approximately 20 minutes before returning to Drifters. (D. 70-1, at p. 62; D. 70-2, at p. 20). Hendershott then drove his companion home after Drifters closed at 1:00 a.m. (D. 70-1, at p. 68).

After dropping off his companion, Hendershott began driving in the wrong direction on Interstate 55 when he collided with Plaintiffs' vehicle. Hendershott admitted that alcohol was a factor in his collision with Plaintiffs' vehicle later that night. (D. 70-1, at p. 91). Illinois State Trooper Daniel Rossiter interviewed Hendershott at the hospital on October 22, 2015. (D. 70-2, at p. 8). Hendershott told Officer Rossiter that while at Fat Jack's, he purchased and consumed a "Fat Jack" cocktail. (D. 70-2, at p. 20). Trooper Jason Pignon, a trooper with the Illinois State Police, who responded to the scene of the crash and conducted an investigation at the scene and the hospital, was advised by the hospital staff that Hendershott's blood alcohol content ("BAC") was 0.149. (D. 70-3, at pp. 15, 31).

Defendant Fat Jack's disputes only one of the statements in Plaintiffs' statement of undisputed facts. Fat Jack's disputes that the beverage Hendershott purchased and consumed at Fat Jack's was alcoholic, and argues that if the drink did contain alcohol, it was a negligible amount. (D. 74, at p. 3). Fat Jack's further disputes the statement that a "Fat Jack" cocktail is a

3

mixed drink made from red and orange vodka, cranberry juice, orange juice, and 7-Up. (D. 74, at p. 3).

**Legal Standard**

Summary judgment is appropriate where one party shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In resolving a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of facts that requires a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When asked to grant or deny a motion for summary judgment, the Court must view "all facts and draw all reasonable inferences in the light most favorable to the non-moving party." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citing *Allen v. City of Chicago*, 351 F.3d 306, 311 (7th Cir. 2003)). However, the moving party is "entitled to a judgment as a matter of law" if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Fed. R. Civ. P. 56(c)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## Analysis

### (A) Dram Shop Act in Illinois

In Illinois, the Dram Shop Act is set forth in Article VI, § 6-21 of the Illinois Liquor Control Act. 235 ILCS 5/6-21. Subsection (a) provides in relevant part, "[e]very person who is injured within the State … by an intoxicated person has a right of action … against any person, licensed under the laws of this State or of any other state to sell alcoholic liquor, who by selling or giving alcoholic liquor, within or without the territorial limits of this state, causes the intoxication of such person." 235 ILCS 5/6-21. The Dram Shop Act provides the sole remedy against tavern operators and owners of tavern premises for any injury caused by an intoxicated person or in consequence of intoxication. *Hopkins v. Powers*, 113 Ill.2d 206, 216 (1986). Moreover, "the legislative intent of the Dram Shop Act is to place responsibility for damages caused by the intoxication from the consumption of alcohol on those who profit from its sale." *Walter v. Carriage House Hotels, Ltd.*, 164 Ill.2d 80, 86-87 (1995). More than one dram shop can be liable if more than one shop caused the intoxication. The statute recognizes this by giving the right of action "severally or jointly" against any person who causes the intoxication. *Al-Hazmi v. Waukegan*, 579 F. Supp. 1441, 1443 (N.D. Ill. 1984).

### (B) Defendant Fails to Rebut Plaintiffs' Statement of Facts

The Plaintiffs must prove that the intoxication was caused by consumption of liquor provided by a Defendant and that the injury, property damage, loss of means of support, or loss of society was caused by the act of an intoxicated person. *Charles v. Seigfried*, 651 N.E.2d 154, 157 (1995) (citing *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)). Plaintiffs' burden of proof in a Dram Shop Act case must satisfy five elements. First, the alleged intoxicated person must have been intoxicated at the time of the collision. *Reynolds*, 623 F.3d at

1146. According to Trooper Pignon, when he pulled Hendershott from the vehicle, Trooper Pignon smelled an "odor" of alcohol. (D. 70-3, at p. 30). In addition, shortly after the collision, the hospital which Hendershott was taken to for medical care performed a blood draw and Hendershott's BAC was recorded as 0.149. (D. 70-3, at p. 15). Furthermore, Hendershott entered a plea of guilty to the charge of aggravated driving while under the influence. (D. 70, at p. 6). Therefore, Plaintiffs have established that Hendershott was intoxicated at the time of the collision.

The second prong the plaintiff must prove is that the Defendant, their agents or employees, sold or gave intoxicating liquor consumed by the person. *Mohr v. Jilg*, 586 N.E.2d 807, 810 (Ill. 1995). Fat Jack's advertises itself as "Bloomington's Favorite Craft Beer Bar & Club." (D. 77-1, at p. 2). The first drink listed on their menu is a "Fat Jack" cocktail and sets forth that the "Fat Jack" cocktail is alcoholic. Specifically, regarding the "Fat Jack" cocktail, the menu states: "*Our signature house cocktail is made up of Red & Orange Vodka, Cranberry juice, Orange juice and topped with 7-UP.*" (D. 77-1, at p. 2). Defendant Hendershott stated in his deposition that he visited Fat Jack's in the early morning hours of October 9, 2015 and purchased and consumed a "Fat Jack" cocktail. (D. 70-1, at p. 65). Furthermore, Hendershott stated he knew a "Fat Jack" contained alcohol and that he had drank them before. (D. 70-1, at p. 67). In support, Plaintiffs cite the following excerpt from Hendershott's testimony:

> Q. Okay. Approximately how long were you there?
> A. I'm not sure, I would say 15 to 20 minutes.
> Q. Okay. Did you drink any alcohol there [Fat Jack's]?
> A. Yeah, I had what, what they call as a Fat Jack, and I cannot tell you what that is. I — it's a blue or green drink, I don't remember. I think it is a green one. I could be wrong. I don't — its blue or green.
> Q. Okay.
> A. They are known for Fat Jack's, and I think its called a Tsunami is the other drink they're kind of known for —
> Q. Okay.

> A. And one's green and one's blue.
>
> D. 70-1, at p. 67
>
> > Q. Okay. And as you sit here, you, do you know what the actual type of liquor is in a Fat Jack?
> > A. I do not.
> > Q. Okay. And you had one of these before, correct?
> > A. That is correct.
>
> *Id.*, at p. 67

Defendant denies that the beverage Hendershott purchased and consumed at Fat Jack's was alcoholic and further denies that the ingredients purported to make up a "Fat Jack" cocktail, as stated on their online menu, is accurate. (D. 74, at p. 3). However, Fat Jack's fails to provide any evidence to support this assertion. Moreover, Fat Jack's does not cite any evidence the alcohol purchased and consumed by Hendershott was *de minimus* and did not contribute to his intoxication. Nor has Fat Jack's provided any facts regarding how the drink is made, the amount of liquor used, or the size of the glass in order for the Court to find that the amount of alcohol Defendant provided to Hendershott was *de minimus*. In addition, Fat Jack's fails to cite any specific amount of alcohol that Hendershott consumed in order for the Court to surmise whether this was a negligible amount of alcohol, and thus did not contribute to Hendershott's intoxication when he collided with the Plaintiffs' vehicle after drinking at Defendant's establishment. Although Defendant insists that a possibility exists that Hendershott's cocktail could have been made without alcohol, they offer no evidence to support their position. *See* Fed. R. Civ. P. 56(e)(2). (failure to properly support or address a fact). Thus, Plaintiffs have established that Fat Jack's sold intoxicating liquor to Hendershott and that he consumed it. The second prong has been met.

Third, Plaintiffs must show that the consumption of liquor caused the Defendant's intoxication. *Kingston v. Turner*, 505 N.E.2d 320, 326 (Ill. 1987). Here, the word "causes," as

used in the Liquor Control Act, was specifically construed to mean "whether the defendants' conduct was a material and substantial factor in … contributing to produce the intoxication." *Id.* at 326. Hendershott stated he was not feeling any effects of the alcohol when he and his companion left Shooters. (D. 70-1, at p. 48). They then stopped at Drifters for approximately 30 minutes before heading to Fat Jack's. Therefore, it is likely that Hendershott was already intoxicated when he arrived at Fat Jack's. Hendershott's consumption of another alcoholic drink while already intoxicated was thus a substantial factor that "contribut[ed] to produce the intoxication." *Id.* at 326.

The fourth prong that must be satisfied is that the person's intoxication was at least one cause of the occurrence in question. *Mohr*, 586 N.E.2d at 810. Hendershott admitted that alcohol was a factor in his collision with Plaintiffs' vehicle on October 9, 2015. (D. 70-1, at p. 91). Moreover, Trooper Pignon, taking into account the odor he noticed emanating from Hendershott as Pignon extricated him from the vehicle, coupled with the blood test results, determined that Hendershott's driving under the influence of alcohol was the most likely cause of the collision. Defendant has not rebutted this with evidence to the contrary. (D. 70-3, at pp. 30, 32). Thus, this prong has been met.

Lastly, it must be proven that as a result of the occurrence, Plaintiffs suffered an injury. *Mohr*, 586 N.E.2d at 810. This has been established as the collision between Hendershott's and Plaintiffs' vehicles caused every person traveling in Plaintiffs' vehicle to sustain injuries of varying degrees.

**(C) Defendant Has Not Established a Genuine Dispute of Material Fact**

Here, Defendant has failed to establish a genuine dispute of material fact on the issue of liability and therefore, Plaintiffs' statement of facts is deemed admitted. *See* CDIL L.R.

7.1(D)(2)(b)(6). Neither "the mere existence of *some* alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, is sufficient to defeat a motion for summary judgment. Accordingly, Plaintiffs are entitled to partial summary judgment in their favor on the issue of liability because the Establishment Defendants have failed to come forward with any evidence to rebut Plaintiffs' statement of facts.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment (D. 70) is GRANTED.

Signed on this 9th day of July, 2018.

<u>s/ James E. Shadid</u>
James E. Shadid
Chief United States District Judge